**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SHENZHEN JI'AN HEALTH TECHNOLOGY
CO., LTD.,

                Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A,

                Defendants.

Civil Action No. 26-cv-1386

**COMPLAINT**

Plaintiff, Shenzhen Ji'an Health Technology Co., Ltd. ("Plaintiff" or "Shenzhen") by and through its undersigned counsel, hereby files this Complaint against the entities identified on Schedule A hereto (collectively, "Defendants"). Plaintiff files this action to combat online infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized, unlicensed, counterfeit, and infringing versions of Plaintiff's federally registered design patent (the "Infringing Products"). Defendants have offered for sale, sold, and distributed the Infringing Products within this district and throughout the United States by operating e-commerce stores using their respective Store Names and Seller Names set forth on Schedule "A" hereto (collectively, the "Seller Aliases"). As set forth below, Defendants, without authorization, are using Plaintiff's federally registered patent by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling products embodying the Patented Design. Plaintiff is forced to file this action to combat Defendants'

1

infringement of Plaintiff's patent, as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's patent; therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it has sustained and is sustaining. In support thereof, Plaintiff states as follows:

### NATURE OF THE ACTION

1. Shenzhen Ji'an Health Technology Co., Ltd. is a Chinese limited company that owns the design patent asserted in this case, which is issued by the United States Patent and Trademark Office. Shenzhen currently sells products embodying its patented design on various online storefronts ("Plaintiff's Products"), and has licensed the design to other stores, all of which generates a considerable amount of revenue.

2. Shenzhen's design patent protects the innovative design of its proprietary body massager and is issued by the United States Patent and Trademark Office under patent number D1,050,475 (the "Patented Design") with an issue date of November 5, 2024.

3. A true and correct copy of the registration for the Patented Design is attached as Exhibit 1.

4. After obtaining the registration for the Patented Design, Shenzhen conducted an internet inquiry and discovered that the Defendants were selling products that displayed the Patented Design to market and sell their infringing products, despite having no license or authorization to use the Patented Design.

5. On information and belief, Defendants' infringing activities of offering for sale, marketing, and selling Infringing Products embodying Shenzhen's Patented Design arise from the same transaction, occurrence, or series of transactions. Specifically, on information and belief,

2

Defendants are actively participating in a conspiracy to distribute and sell Infringing Products to United States consumers. Further, Defendants, on information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products. Moreover, the Infringing Products and their corresponding listings share similar characteristics suggestive of common ownership or scheme.

6.      Plaintiff files this action to combat online infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized, unlicensed, and infringing items embodying Plaintiff's federally registered patent. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for this sustained injury.

7.      Plaintiff therefore brings this action for federal patent infringement pursuant to 35 U.S.C. § 271, *et seq*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

## JURISDICTION AND VENUE

8.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the claims in this action are brought under the provisions of the Patent Act, 35 U.S.C. § 101 *et seq.*

### Personal Jurisdiction

9.      Federal courts may "assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F. 2d 434, 436 (3rd Cir. 1987)). This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa.

Cons. Stat.§ 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit." Therefore, Pennsylvania authorizes personal jurisdiction over a defendant who commits even a single tortious act in the Commonwealth for the purpose of thereby realizing pecuniary benefit. 42 Pa. Cons. Stat § 5322 (a). Courts regularly exercise personal jurisdiction over a given defendant based on that defendant's operation or use of an interactive website through which products may be purchased and are sold to consumers within the judicial district. *See e.g., Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008); *Malletier v. 2016bagsilouisvuitton.com*, No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18, 2016).

10. Although the Third Circuit has not yet considered specific jurisdiction arguments in the context of an online infringement case, this Court has found guidance on this issue from the rulings of the Seventh Circuit. *Nifty Home Prods. v. Ladynana United States*, No. 22-cv-0994, 2023 U.S. Dist. LEXIS 79743 at *13-14 (W.D. Pa. May 5, 2023). Specifically, the Court has applied the Seventh Circuit's rulings to establish personal jurisdiction over China-based infringers that have conducted commerce over the internet, even if those infringers have no physical presence

in the United States. *Id.* at \*15 (citing *NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022); *Talisman Designs, LLC v. Dasani, et al.*, No. 20-cv-1084, slip op., p. 2 (W.D. Pa. Oct. 13, 2020)). "[S]ellers on Amazon, Aliexpress, and eBay 'may not avoid personal jurisdiction by this Court on the basis that the Great Wall of China renders the district court without jurisdiction to protect brand owners from counterfeit products like this.'" *Id.* (quoting *Dasani*, No. 20-cv-1084, slip op., p. 2). Foreign counterfeiting defendants are also subject to jurisdiction in this Court, and elsewhere in the United States, under Federal Rule of Civil Procedure 4(k), when they lack sufficient contact with any particular state and refuse to identify which forum would be the proper venue to bring suit. *Id.* at \*16 (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009)).

11.    Alternatively, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district.

12.    Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platforms and storefronts, via on-line marketplace websites such as Amazon, Walmart, Temu, and others (the "Third Party Platforms"), under the Seller Aliases, as well as any

and all as- yet-undiscovered accounts with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the United States, including Pennsylvania, can view the one or more of Defendants' online storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

13.     Upon information and belief, Defendants are sophisticated sellers, operating one or more commercial businesses using their respective storefronts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

14.     Upon information and belief, Defendants' online storefronts evidence multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

15.     Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

6

16.     Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment of the Infringing Products.

17.     Plaintiff also markets and offers for sale its genuine products to consumers in the U.S., including Pennsylvania through authorized distributors and third parties via the Internet.

18.     Upon information and belief, Defendants are deliberately employing and benefiting from coordinated paid advertising and marketing strategies in order to make their storefronts selling illegal goods appear more relevant and attractive to search result software across an array of queries. By their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of genuine Plaintiff's Products on various on-line marketplaces and/or diluting and driving down the retail market price (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's works and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about this brand and products.

19.     Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Pennsylvania.

20.     Upon information and belief, many Defendants reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax or nonexistent intellectual property enforcement systems.

21.     Upon information and belief, Defendants are aware of Plaintiff's products and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

**Venue**

22.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) which authorizes civil action to be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. "In making a determination as to whether venue is proper under §1391(b)(2), '[t]he test . . . is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim'[.]'" *Kneuven v. Lysten, LLC*, Civil Action No. 2:23-cv-00368, 2023 U.S. Dist. LEXIS 187157 at *6 (W.D. Pa. Oct. 17, 2023) (quoting *Bockman v. First Am. Marketing Corp.,* 459 F. App'x 157, 161 (3d Cir. 2012)). Section 1391(b)(2) does not require a court to determine the best forum, or the forum with the most substantial events. *Murphy v. Humbolt Clothing Co.,* Civil Action No. 1:20-cv-58-SPB, 2021 U.S. Dist. LEXIS 17072 at *21 (W.D. Pa. Jan. 29, 2021). "In fact, venue may be proper in more than one district. It is necessary 'only that a substantial part of the events occurred [in the forum where suit is brought].'" *Id.* (quoting *Stursberg v. Morrison Sund, Pllc,* No. CV 20-1635-KSM, 2020 U.S. Dist. LEXIS 233042, 2020 WL 7319546, at *16 (E.D. Pa. Dec. 11, 2020)). Further, as stated above, both Plaintiff and Defendants conduct substantial business in Pennsylvania.

23.    Here, Plaintiff's infringement investigation centered not only on the sale of products with substantial similarity to Plaintiff's Patented Design, but also the state in which Defendants were selling the Infringing Products - Pennsylvania. Therefore, a substantial part of the events giving rise to Plaintiff's claims occurred within this forum. As discussed above and shown in Plaintiff's presented evidence attached as Exhibit 2, each of the Defendants offers for sale products infringing upon Plaintiff's Patented Design to consumers in the forum. Select screenshots of Plaintiff's evidence demonstrates that Defendants were and are offering for sale and/or selling Infringing Products in this forum. This exemplary evidence is included in the table below:







24.    Each Defendant's offer for sale within the forum is a substantial part of Plaintiff's claims and establishes a proper venue in this district. *See Murphy*, 2021 U.S. Dist. LEXIS 17072

at *21. Further, Defendants are not prejudiced by Plaintiff's selection of venue, as they may have the right to file a motion, after receiving notice of the case, contesting venue and explaining why the case should be dismissed or transferred.

25.     Venue in this district is further justified by 28 U.S.C. § 1391(b)(3) and 28 U.S.C. § 1391(c)(3). Section 1391(b)(3) states "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is an appropriate venue. As discussed herein, Defendants are subject to personal jurisdiction before this Court arising from their tortious acts within the forum. Additionally, Defendants are foreign entities who do not reside in any other United States judicial district, as provided for in Section 1391(b)(3); meaning that if the Court rejects Plaintiff's claims of substantiality, venue is not otherwise provided for under Section 1391(b) and is appropriate here as this Court has personal jurisdiction over Defendants. Similarly, Section 1391(c)(3) states that non resident defendants may be sued in any judicial district. *See Nationwide Prop. & Cas. Ins. Co. v. Rockford Commer. Warehouse, Inc.,* No. 2:18-cv-01458-RJC, 2020 U.S. Dist. LEXIS 74182 at *13 (W.D. Pa. Apr. 28, 2020) (holding that venue was proper over a China-based company in any district). Even if the Court finds that personal jurisdiction is lacking, venue is still proper under statute.

26.     Accordingly, venue is proper before this Court either because a substantial part of events giving rise to Plaintiff's claims occurred in the district, or else because Defendants do not reside in any State and are subject to this Court's exercise of personal jurisdiction, or else because Defendants are nonresidents of the United States.

27.     For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. In short, each

of the Defendants is committing tortious acts in Pennsylvania via offering for sale and/or sale of their infringing goods through their online marketplaces, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Pennsylvania.

## THE PARTIES

**Plaintiff Shenzhen Ji'an Health Technology Co., Ltd.**

28.    Plaintiff is a Chinese limited company based in China that owns the design patent asserted in this action, which is issued by the United States Patent and Trademark Office.

29.    Plaintiff manufactures and sells products through its own online webstores and licenses use of the Patented Design to a limited number of manufacturers of health and wellness devices that are sold online and in retail shops around the world.

30.    Among the exclusive rights granted to Plaintiff under the Patent Act are the exclusive rights to manufacture, distribute, import, offer for sale, and/or sell goods encapsulated by Plaintiff's Patented Design.

31.    Plaintiff plans to expand the manufacturing and sales of products embodying its patented designs, including the Patented Design asserted in this case. Plaintiff also licenses its patent to other manufacturers who will be using the design on various products.

32.    Plaintiff's Products are known for their distinctive patented designs. These designs are broadly recognized by consumers and are highly sought after health and wellness products. Products styled after these designs are associated with the quality and innovation that the public has come to expect from Plaintiff's Products. Plaintiff uses these designs in connection with its Products, including, but not limited to, the designs shown in the below table and in Exhibit 1. Plaintiff's Products, including those which embody the Plaintiff's Patented Design, are marked in compliance with 35 U.S.C. § 287(a):

| Patent Number | Claim | Issue Date |
|---|---|---|
| D1,050,475 |  FIG. 1   FIG. 5 | Nov, 5, 2024 |

33.     Plaintiff's registration for the Patented Design is valid and enforceable.

34.     Plaintiff is widely advertising and promoting genuine goods embodying Patented Design via the Internet. Third Party Platforms have become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff has been expending significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff to educate consumers fairly and legitimately about the value associated with genuine

Plaintiff's Products. Defendants' individual Seller Aliases are similarly indexed on the Third Party Platforms and compete directly with Plaintiff for premium "first page" space in internet search results, resulting in a flooding of the market with Infringing Products and irreparably harming Plaintiff and its business.

**The Defendants**

35.    Defendants are individuals and business entities who reside in the People's Republic of China and other foreign jurisdictions, as identified on Schedule A. Defendants conduct business or assist in business conducted throughout the United States (including within the Commonwealth of Pennsylvania and this judicial district) through the manufacturing, online advertising and offering for sale, and importation and distribution of products that incorporate counterfeit and Infringing Products that embody the Patented Design, by operating e-commerce stores using their respective Store Names and Store IDs set forth on Schedule "A" hereto (collectively, the "Seller Aliases").

36.    Defendants appear to be an interrelated group of counterfeiters and infringers, who create numerous Seller Aliases and design these stores to appear to the consuming public to be selling genuine versions of Plaintiff's licensed products, while they are actually selling inferior imitations of Plaintiff's licensed products.

37.    The Seller Aliases share unique identifiers with common design elements, such as the same or related products offered for sale, identical product descriptions or product titles, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, identically or similarly priced Infringing Products and volume sales discounts.

15

38. These similar elements between Seller Aliases establish a logical relationship between them and suggests that Defendants' illegal operations arise out of the same transaction or occurrence.

39. Defendants attempt to avoid and mitigate liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their stores multiple times, opening new stores, helping their associated entities open stores, and making subtle changes to their products. Further, many of the platforms used by Defendants including Amazon, Walmart, Temu, and others, do not properly verify or confirm names or addresses used by operators of the stores, which allows counterfeiters to open as many stores as they can using any number of names.

40. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to determine the precise scope and the exact interworking of their counterfeit network.

41. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### <u>DEFENDANTS' UNLAWFUL CONDUCT</u>

42. Plaintiff's business success has resulted in significant infringement of Plaintiff's federally protected patent. Consequently, Plaintiff maintains an anti-counterfeiting program and investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.

43. Plaintiff has identified many fully interactive e-commerce stores, including the Seller Aliases, offering for sale, and/or selling Infringing Products to consumers in this judicial

16

district and throughout the United States on platforms such as Amazon, Walmart, Temu, and others.

44.    Defendants operate at least the Seller Aliases identified in Schedule A and engage in counterfeit use of Patented Design, including offering for sale and selling Infringing Products which is causing irreparable harm to Plaintiff's business.

45.    Defendants' sale, distribution, and advertising of Infringing Products are highly likely to cause consumers to mistakenly believe that Defendants are offering and selling authorized products when in fact they are not.

46.    According to an intellectual property rights seizures statistics report issued by the United States Customs and Border Protection, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. *See* United States Customs and Border Protection, *Intellectual Property Rights Seizure Statistics*, June 26, 2024, (https://www.cbp.gov/sites/default/files/2024-06/ipr-seizure-stats-fy23-508.pdf), at 2. China and Hong Kong are consistently the top two countries for IPR seizures. In FY 2023, seizures from China and Hong Kong accounted for 84% of the MSRP and 90% of the total quantity seized. *Id.* at 4.

47.    E-commerce retail platforms such as those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to regularly use false names and addresses when registering with these e-commerce retail platforms.

**The Scope of Defendants' Infringing Activities**

48.    Upon information and belief, each Defendant operates more than one merchant storefront.

49. Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

## JOINDER OF DEFENDANTS

50. As stated above, on information and belief, Defendants often operate under multiple fictitious aliases, and unauthorized on-line retailers such as the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other identifying information and likewise omit other seller aliases that they use.

51. Further, such unauthorized retailers include other notable common features on their internet stores such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, similarities in price and quantities, and/or the use of the same text and stock images or artificially produced images.

52. The Infringing Products offered for sale by unauthorized retailers such as the Seller Aliases often bear irregularities and indicia of being unauthorized that are similar to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

53. On information and belief, groups of infringers such as Defendants here are typically in communication with each other. They regularly participate in WeChat chat rooms, and communicate through websites such as sellerdefense.cn and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and new lawsuits.

54. Infringers such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation despite enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that offshore infringers

18

regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of the U.S. and this Court.

55. Here, on information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such offshore accounts based outside of the jurisdiction of this Court.

56. On information and belief, Defendants undertake the activity alleged in the preceding paragraphs in an attempt to avoid payment of any monetary judgment awarded based on their infringement of intellectual property rights such as those asserted by Plaintiff.

57. Defendants appear to be an interrelated group of infringers, who create numerous Seller Aliases and design these stores to appear to be selling genuine versions of Plaintiff's Products, while they are actually selling inferior, unauthorized imitations of Plaintiff's Products.

58. The Seller Aliases share unique identifiers, such as the following: common design elements, the same or similar counterfeit and infringing products that they offer for sale, similar infringing product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced counterfeit and infringing products and volume sales discounts. The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences.

59. These tactics used by Defendants to conceal their identities and the full scope of their infringing operations make it almost impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

**CAUSE OF ACTION**
**DESIGN PATENT INFRINGEMENT (35 U.S.C. § 271(a))**

60.     Plaintiff hereby re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs.

61.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have, jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the Patented Design.

62.     Defendants make, use, sell, offer for sale, and/or import into the United States products that infringe the Patented Design.

63.     In the eye of an ordinary observer, the design of Defendants' Infringing Products and the designs claimed in the Patented Design are substantially the same. The similarities between Plaintiff's Products and the Infringing Products deceives prospective purchasers and induces them to purchase Defendants' products, supposing them to have been sourced from the inventor.

64.     The mechanism of infringement is demonstrated through direct visual reproduction of the Patented Design's unique structural elements. Defendants are engaged in unauthorized manufacturing of products using identical design specifications, marketing and selling products that are substantially indistinguishable from the Patented Design, thereby exploiting the distinctive ornamental characteristics protected by the Patented Design. The infringement mechanism specifically involves copying the exact aesthetic design elements of the Patented Design without authorization.

20

65.    Defendants' Infringing Products misappropriate the novelty of the designs claimed in Plaintiff's Patented Design that distinguished the Patented Design from the prior art.

66.    Defendants sell, offer for sale, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the ornamental designs claimed in the Patented Design.

67.    Defendants have infringed Patented Design through the acts complained of herein and will continue to do so unless enjoined by this Court.

68.    Defendants have had actual and/or constructive notice of Plaintiff's rights in the Patented Design because the patent number is marked on products embodying the Patented Design and/or their packaging in accordance with 35 U.S.C. § 287.

69.    Defendants' infringement of Patented Design has been willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

70.    Defendants' infringement of the Patented Design has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful rights under U.S. patent law to exclude others from making, using, selling, offering for sale, and importing the designs claimed in the Patented Design.

71.    Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283 to halt Defendants' infringement of the Patented Design, which has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful rights under U.S. patent law to exclude others from making, using, selling, offering for sale, and importing the designs claimed in the Patented Design.

72.     Plaintiff is entitled to recover damages adequate to compensate Plaintiff for Defendants' infringement of the Patented Design, including Defendants' profits pursuant to 35 U.S.C. § 289.

73.     Plaintiff is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284 which should include no less than a reasonable royalty.

## PRAYER FOR RELIEF

Because Defendants operate online storefronts and have the ability to control their product listings and sales activities, they have the capacity to comply with any order the Court may issue granting the injunctive relief Plaintiff prays for as necessary and adequate remedy for Defendants' unlawful conduct.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(1)     Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from the following actions. Given that Defendants operate online storefronts and have the ability to control their product listings and sales activities, they have the capacity to comply with the proposed injunctive relief without undue burden:

        (a)     manufacturing, distributing, importing, offering for sale, and/or selling products embodying the Patented Design that is not a genuine Plaintiff's Product or is not authorized by Plaintiff to be sold;

        (b)     passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's Product or any other product produced by Plaintiff, which is not Plaintiff's or not produced under the authorization, control, or

22

supervision of Plaintiff and approved by Plaintiff for sale under Patented Design;

(c)    committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff; and

(d)    manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which embody the Patented Design, including any reproductions, counterfeit copies, or colorable imitations thereof.

(e)    effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

(f)    aiding, abetting, contributing to, or otherwise assisting anyone in infringing Plaintiff's patent for the Patented Design.

(2)    Directing that Defendants deliver to Plaintiff for destruction all products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of any of Plaintiff's patents and/or display or otherwise make unauthorized use of Plaintiff's patents, including the Patented Design.

(3)    Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third parties who are in active

concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

> (a) Locate all accounts connected to Defendants;
>
> (b) Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and
>
> (c) Transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order.

(4) Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and on-line marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

> (a) Locate all accounts connected to Defendants;
>
> (b) Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and
>
> (c) Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

(5) A finding that this case is exceptional under 35 U.S.C. § 285. Awarding Plaintiff such damages as it may prove at trial adequate to compensate Plaintiff for Defendants' infringement of the Patented Design and awarding Plaintiff all of the profits realized by Defendants, or others who are or were acting in concert or participation with Defendants, from Defendants' unauthorized use and infringement of Plaintiff's intellectual property.

(1)    Alternatively, should the Court not award Plaintiff enhanced damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of the Patented Design as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(2)    Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

(3)    Awarding Plaintiff any and all other relief that this Court deems just and proper.

Date: June 18, 2026

Respectfully submitted,

*/s/ Keaton Smith*
Keaton Smith IL #6347736
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (872) 294-3799
Email: ksmith@whitewoodlaw.com

*Counsel for Plaintiff*

25